**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HOWARD SALTER,                               :

      Plaintiff,                            :

vs.                                          :          CA 12-0657-C

CAROLYN W. COLVIN,                           :
Acting Commissioner of Social Security,
                                             :
      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 14 & 16 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the August 21, 2013 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 14 & 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of (Continued)

Plaintiff alleges disability due to degenerative disc disease of the lumbar spine with spondylosis, bilateral shoulder arthrosis, bilateral knee arthrosis, depression and anxiety. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.**
>
> **2.     The claimant has not engaged in substantial gainful activity since May 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> .     .     .
>
> **3.     The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with spondylosis, bilateral shoulder arthrosis, bilateral knee arthrosis, substance abuse disorder, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).**
>
> .     .     .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .     .     .
>
> **5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can [only] occasionally reach overhead, climb stairs/ramps, bend, stoop, kneel, crouch, or have contact with the general public. The claimant cannot have complex or detailed job instructions but can do simple one and two-step job instructions. The claimant can never climb ladders, ropes, or scaffolds; work at unprotected heights or around dangerous equipment; crawl; or work in crowds.**
>
> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that he has difficulty[] sitting, standing, walking, lifting, and carrying things. He stated that he also has problems with concentration.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's back and knee impairments, the claimant's allegations are not fully supported by the medical evidence. The claimant testified that he wears a back brace that he purchased himself. He also stated that he is prescribed narcotic medications for treatment of his pain. While Dr. Fletcher has prescribed the claimant's narcotic medications repeatedly, there is relative consistency in the dosage and frequency. Although it is a substantial dosage of narcotic medications, there has been little change in his medications, little change in his treatment, and little treatment or clinical signs showing objective evidence of pain in Dr. Fletcher's treatment notes. The claimant had a positive straight leg raising test according to Dr. Fletcher, but there was evidence of only increased muscle tension reported as a result of his back impairment. On the other hand, Dr. Pace stated in May 2009 that the claimant specifically did not have a positive straight leg raising test, a clinical sign to confirm pain. Furthermore, Dr. Fletcher even reported in September 2009 that the claimant described only occasional left sciatica and frequent muscle

spasms. On the other hand, there are no clinical observations that confirm the existence or severity of either complaint, aside from the consistent positive straight leg raising test, throughout the treatment notes. As a result, the extent of the use of pain medications and the claimant's allegations are inconsistent with the proportionality treatment he has received by Dr. Fletcher and Dr. Pace.[2]

Likewise, while Dr. Fletcher observed tenderness in both the claimant's knees and shoulder[s] during several examinations, there has been no significant evidence of ongoing treatment of the claimant's knee impairment[s].[3] There is no significant change in his medications or treatment that can be attributed to knee pain at the examination during which knee pain was reported or "tender both shoulders & both knees" was identified in his treatment.

The claimant testified that his medications cause him to experience drowsiness and forgetfulness. However, even Dr. Fletcher stated that the claimant's side effects "would not impose limitations to such a degree as to create serious problems in most instances["].[4] Likewise, the claimant's treatment notes provide no evidence that he has reported drowsiness or forgetfulness to the extent he alleges. The claimant has been prescribed narcotic medications, but the claimant's treatment notes show far greater reports of gastrointestinal complaints that have caused the adjustment in his medications. However, the claimant has sought refills with his general practitioner and been advised that he must maintain his narcotic medications with Dr. Fletcher. Furthermore, the substantial gap in treatment with Dr. Fletcher between 2005 and June 2009 is also inconsistent with the claimant's allegations prior to 2009.

After the onset date, the claimant also testified that he returned to work for a period of time. The claimant testified that in 2009 his work at a construction site was limited due to weather conditions. Nevertheless, he stated that he built scaffolding, built framing, and dug footers for the construction site. The claimant also testified that he was helping his

---

[2]     The undersigned has no idea what this statement means, particularly since the pain medications plaintiff takes were prescribed by Dr. Fletcher.

[3]     This is another curious statement since the evidence of record establishes that Dr. Fletcher was treating plaintiff for his knee and shoulder impairments and the ALJ found these impairments to be severe impairments.

[4]     It is because of this reference to (and apparent reliance upon) Dr. Fletcher's pain assessment forms (*see* Tr. 331 & 344) that the Court is unsure whether the ALJ—later in her opinion—meant to reject Dr. Fletcher's pain assessment forms. Of course, if she did not intend to reject these forms, she arguably should have included in her hypothetical questions posed to the VE that "[p]ain is present to such an extent as to be distracting to the adequate performance of work activities." (Tr. 331 & 344.)

mother perform household repairs recently, but he stated that he was working on a ladder, had to use a tennis racket to swat bees, and fell off the ladder injuring himself. The claimant also testified that he mowed the grass at least twice on a riding lawnmower in the recent past. However, his mother reported that he mowed the grass for thirty minutes twice a month in August 2009, but he testified that using the riding lawnmower caused him to be in bed for two days as well. He also reported working on cars for friends; however, he also stated that he no longer works on cars despite his report of very recent automotive repair work. The claimant testified that he is in the process of selling his cars. He stated that he had several cars that he can no longer detail or repair. With regard to more simple activities, the claimant's mother also reported that he can take out the trash, cook meals, wash laundry, and shop for groceries. The claimant stated that he may even take short fishing trips also. The claimant also reported that he cares for his dog and is able to live alone. He did live with his mother but now lives in her house alone. The claimant reported that he uses alcohol regularly when someone brings him alcohol; however, the claimant testified that his most recent alcohol use occurred one week prior to the hearing. He stated that a friend brought their (sic) car to him to fix it. He stated that he crawled under the dashboard to get to the fuse box during this instance.

The claimant did have an x-ray in June 2009 that showed degenerative changes in his lumbar spine and evidence of a fracture of the transverse process on the left.[5] The medical evidence shows that[] although scaffolding did fall on him injuring his back in 2009, there is little treatment to show that this condition has not healed. There is no further treatment for his back aside from the pain management treatment that has been greatly constant with regard to the medications and clinical findings. Likewise, after the time of his injury of his back in 2009, it was noted that "the Roxicodone dosage is adequate" in February 2010. Furthermore, in September 2009, the claimant's condition was described as "occasional left sciatica & frequent lumbar spasms." One of the few changes made to his medications was in August 2009 when he did report that the Lortab dosage was not strong enough. Likewise, even at the time of his initial x-ray, the claimant's emergency room records show his pain to be mild in severity and aching in quality. He was also in only "mild" distress.

Therefore, due to his back impairment and knee impairment, the claimant can only occasionally climb stairs/ramps, bend, stoop, kneel, or crouch. The claimant can never climb ladders, ropes, or scaffolds or work at unprotected heights or around dangerous equipment due to his medications. Likewise, his combination of knee, back, and shoulder impairments could preclude all crawling. However, the claimant would

---

[5]     There were actually several fractures of the transverse process of plaintiff's lumbar spine on the left. (Tr. 294.)

not be limited in his ability to sit for six hours in an eight-hour workday or stand and/or walk for six hours in an eight-hour day.

In terms of the claimant's shoulder impairment, his alleged limitations are not fully supported by the medical evidence. The claimant testified that his "rotator cuffs are scraping and scrubbing." However, the claimant testified that he is able to use the computer. His mother also reported that he uses a mobile phone to send text messages and plays the guitar. Dr. Fletcher noted pain in his shoulders, but there has been no treatment, x-rays, or other diagnostic testing for his shoulder[s] during any current treatment. The claimant was advised to consider a left shoulder injection in the past. However, he was advised that moist heat and exercise were advisable as the only treatment. Nevertheless, the treatment all occurred in 2000, several years prior to the claimant's alleged onset date. There is no treatment that confirms any worsening of his shoulder condition other than his infrequent reports of pain to Dr. Fletcher. Likewise, despite the use of injections in the past and the recommendation for an MRI, the claimant has no evidence that he sought treatment for current shoulder pain even to the extent he received treatment for his 2000 shoulder impairment. Dr. Fletcher even reported twice that the claimant is capable of grasping and fine manipulation. While reduced weight is given to his opinion due to the inconsistency with the medical evidence and even his own treatment notes, Dr. Fletcher's failure to even address limitations regarding the claimant's shoulder impairment is further evidence of inconsistency in the claimant's reports of his pain symptoms and his current allegations. Nevertheless, as a result of his shoulder impairment, the claimant would be limited to only occasional overhead reaching.

In terms of the claimant['s] mental impairments and substance abuse, the claimant's allegations are not fully credible. The claimant testified that he has panic attacks that feel like a heart attack. However, the claimant testified that prior to the hearing he had a panic attack. He stated that his medications cause them to occur very seldom. The claimant also testified that he has difficulty concentrating and problems with his memory and reasoning. However, he testified that he only receives medications from his general practitioner. He denied receiving any treatment from a mental health specialist. In fact, the claimant's treatment with Dr. Pace has occurred only on a semiannual basis []. There is little evidence that any more frequent treatment was sought, required, or advised. Dr. Pace also has very little clinical evidence to support any allegations of substantial ongoing depression or anxiety. There are no significant changes made to his medications and there is little evidence that his long-term prescriptions do not substantially control his symptoms. Likewise, there have been multiple instances that show the claimant to have an appropriate mood or affect or even no reports of any clinical signs consistent with symptoms of depression or anxiety. He even had a number of missed appointments with Dr. Pace although only one in May 2009 appears to indicate that he missed any significant period without medications.

However, despite his reported deficit in concentration, the claimant reported using the computer and the Internet. The claimant stated that he follows written directions fairly well although he may have to read them two to three times. [H]e also stated that he gets along well with authority figures. However, the claimant also stated that he continues to use alcohol once or twice a week when anyone gives him alcohol. However, he has been arrested for driving under the influence in the past. The claimant testified that his license is currently suspended also. However, his treatment for alcohol abuse has been all before 2004.

Likewise, the claimant's reports of side effects caused by his medications have also been considered. He stated that he has difficulty with his memory, but the claimant has not reported this complaint during treatment. The claimant has been prescribed narcotic medications, but the claimant's treatment notes show far greater reports of gastrointestinal complaints that have caused the adjustment in his medications. Dr. Fletcher stated that the claimant's side effects "would not impose limitations to such a degree as to create serious problems in most instances["]. Likewise, Dr. Eno stated that the claimant would have the ability to understand, remember, and carry out very short simple instructions and attend for two hour periods. She stated that there is no significant limitation in his social interaction or adaptation. However, in light of his testimony that the panic attacks may have some residual episodes despite his medications, the claimant may have difficulty with more than occasional contact with the general public or working in crowds. Therefore, the claimant would be limited to only occasional contact with the general public and he cannot work in crowds. The claimant also cannot have complex or detailed job instructions but can do simple one and two step job instructions.

As for the opinion evidence, significant weight is given to the opinion of Dr. Eno. Her opinion is the most consistent with the medical evidence. Although the claimant is given the benefit of the doubt that he may have moderate limitations in his ability to maintain social functioning as a result of his reports of panic attacks, the opinion of Dr. Eno is the most consistent opinion evidence regarding the claimant's functioning in light of his psychological impairments.

.     .     .

Likewise, no significant weight can be given to the opinion of Dr. Fletcher expressed on either of his physical capacities evaluation forms. He has provided pain management treatment and nothing further. Although he identifies the claimant's pain as significant, there is no objective findings other than a straight leg raising test that showed the presence or extent of the claimant's pain. Dr. Fletcher identifies his treatment as pain management, but he continued to report that the claimant's pain is uncontrolled in his physical capacities evaluation. This is inconsistent with his unchanging medical treatment and his observations and notes. Dr.

Fletcher has routinely provided the same treatment, made the same observations and then followed up with the claimant in the next month. His statement that the claimant's pain is uncontrolled is inconsistent with the sameness of his treatment. Dr. Fletcher's opinion is also inconsistent with the remainder of the medical evidence regarding both pain and functional limitations.

In sum, the above residual functional capacity assessment is supported by the inconsistency of the claimant's reported symptoms, the effectiveness of the claimant's medications, the limited changes in the claimant's medications over time, the lack of clinical signs or diagnostic test results confirming the extent of the claimant's allegations, the consistency in the claimant's effective pain treatment, the substantial inconsistency between the claimant's activities of daily living and the reported physical limitations, the infrequency of the claimant's psychological treatment, the lack of specialist treatment for his mental impairments, the effectiveness of the claimant's medications and treatment provided by his general practitioner, and the opinion of Dr. Eno.

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.      .      .

**7.      The claimant was born on August 18, 1966 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.      .      .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to

which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as non-postal mail clerk, DOT Code 209.687-026; office helper, DOT Code 239.567-010; light custodial work or housekeeping, DOT Code 323.687-014. The vocational expert testified that there are approximately 1,800 jobs as a non-postal mail clerk, 1,200 jobs as an office helper, and 5,300 jobs as a light custodial work[er] in the state of Alabama. He testified that there are approximately 350,000 jobs as a non-postal mail clerk, 360,000 jobs as an office helper, and 1,100,000 jobs as light custodial work[er] in the national economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 25, 26, 28-32, 32-33, 33 & 34 (internal citations omitted; footnotes added; emphasis in original).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education

and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[6] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam)[7] (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Salter asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.*, not supported by substantial evidence),

---

[6]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[7]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

the first of which is very broad: (1) the Commissioner erred by improperly rejecting the opinions of his treating physician, Dr. Raymond Fletcher, failing to adequately develop the record, and improperly determining that he has the residual functional capacity to perform "light work," a finding which is not supported by linkage to either the medical opinion evidence or reasonable inferences drawn from the medical evidence as a whole; and (2) the Commissioner erred in basing his decision upon a hypothetical question posed to the vocational expert which failed to fairly and accurately describe his vocational limitations. The Court will address these issues in reverse order.

A. **Hypothetical Questions Posed to the Vocational Expert.** Salter contends that the hypothetical questions posed to the vocational expert—and upon which the ALJ relied upon in making her determination of "non-disability"—did not fairly and adequately describe his vocational limitations because she failed to include in those hypotheticals (and even in her ultimate RFC assessment) the full extent of his admitted moderate degree of impairment in ability to maintain concentration, persistence or pace. (Doc. 11, at 18-22.)

There is no question but that "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments[/limitations]." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). As aforesaid, the plaintiff contends that the Commissioner erred in finding that he can perform those light unskilled jobs identified by the VE since the hypothetical questions upon which she relied in making this determination were incomplete (*see* Doc. 11, at 18-22), specifically because the hypothetical question did not include the moderate

limitations in concentration, persistence, and pace found by the ALJ at the third step of the sequential evaluation process (Tr. 27 ("With regard to concentration, persistence or pace, the claimant has moderate difficulties. . . . Dr. Eno stated that [t]he claimant has moderate difficulties in concentration, persistence, and pace.")) and also mentioned at step five of the sequential evaluation process (*see* Tr. 31 ("Dr. Eno stated that the claimant would have the ability to understand, remember, and carry out very short simple instructions and attend for two hour periods.").[8]

The foregoing discussion provides an appropriate transition into consideration of the issue raised by plaintiff, as does the Eleventh Circuit's recognition in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (2011)[9] that requiring a hypothetical question posed to a VE to specifically account for limitations in concentration, persistence, and pace identified in the Psychiatric Review Technique Form ("PTRF")—

---

[8]     The first hypothetical question posed to the VE in this case: "I'm going to ask that you assume we have an individual with the same work history as you've already described for Mr. Salter. I'm going to ask that you assume we have an individual limited in the following fashion: Lifting or carrying no more than 20 pounds occasionally, 10 pounds frequently; overhead reaching no more than occasional; no climbing ladders, scaffolds, or ropes or work around unprotected heights or dangerous equipment; no complex or detailed instructions; no working in crowds." (Tr. 80-81.) In response to this hypothetical question, the VE testified that the hypothetical individual could not perform any of plaintiff's past relevant work but could perform light, unskilled entry level work as a non-postal mail clerk, officer helper, and light custodial worker/housekeeper. (*Id*. at 81.) The ALJ posed a second hypothetical question which added first some additional exertional limitations—that is limiting the hypothetical individual to no crawling and only occasional climbing of stairs and ramps, bending, stooping, kneeling, and crouching—and then the additional "mental" limitation that the individual could have no more than occasional contact with the public; in response, the VE testified that his "answer" to the previous hypothetical would not change. (Tr. 82.)

The ALJ based her third hypothetical question upon the physical capacities evaluation forms completed by Dr. Raymond Fletcher (*compare* Tr. 82-83 *with* Tr. 332 & 343 (PCEs completed by Dr. Fletcher)) and in response thereto the VE testified that the hypothetical individual would be unable to perform any of plaintiff's past relevant work or any other work existing in significant numbers in the national economy. (Tr. 83.)

[9]     In bringing this issue to the Court's attention, plaintiff heavily relies upon the *Winschel* case. (*See* Doc. 11, at 20-21.)

or its mode of analysis—does not improperly conflate the PRT inquiry at steps two and three of the sequential evaluation process with the RFC inquiry at steps four and five. *See id*. at 1180. Indeed, "[t]hough the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter." *Id*. (internal citation omitted), citing *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3rd Cir. 2004) ("'While [Social Security Ruling] 96-8p does state that the [PRT] findings are "not an RFC assessment" and that step four requires a "more detailed assessment," it does not follow that the findings on the [PRT] play no role in steps four and five, and [Social Security Ruling] 96-8p contains no such prohibition.'"). Thus, in considering issues like the one raised by plaintiff in the instant case, the Eleventh Circuit in *Winschel* provides additional guidance, as follows:

> Other circuits have [] rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or **unskilled work**. But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

*Id.; see also Syed v. Commissioner of Social Security,* 441 Fed.Appx. 632, 635, 2011 WL 4425309, *3 (11th Cir. Sept. 22, 2011) ("[A]lthough the hypothetical question posed by the ALJ to the VE did not expressly include Syed's impairments, it implicitly accounted for them, and thus, was not improper. As the record shows, the hypothetical included that there were impairments, and that the individual would require a low-stress work environment. Indeed, the medical evidence demonstrated that Syed could engage in simple, routine tasks and unskilled work despite any limitations, as he was not significantly limited in his ability to complete simple work-like procedures. The medical

evidence also showed that Syed understood and followed specific, multi-step instructions, and was cooperative and responsive. Thus, Syed was only moderately limited in his work capabilities, could accept instruction and criticism, and was not significantly limited in his ability to complete simple work-like procedures. Because simple, unskilled work sufficiently accounted for limitations in concentration, persistence, and pace, as set forth in *Winschel*, the hypothetical posed adequately accounted for Syed's limitations as they were implicitly included."); *Kinnard v. Commissioner of Social Security,* 426 Fed.Appx. 835, 837, 2011 WL 1849319, *1 (11th Cir. May 17, 2011) (hypothetical question posed to the VE found to be complete where the ALJ asked the VE "to determine what work could be performed by a claimant who was mildly limited in his ability to understand, remember, and execute complex instructions; mildly to moderately limited in his ability to make judgments on complex work-related decisions; mildly limited in his ability to interact appropriately with the public, supervisors, and coworkers; and mildly limited in his ability to respond appropriate[ly] to changes in a routine work setting."); *Jarrett v. Commissioner of Social Security,* 422 Fed.Appx. 869, 871, 2011 WL 1378108, *2 (11th Cir. Apr. 11, 2011) ("In this case, the ALJ's hypothetical questions adequately accounted for Jarrett's impairment in concentration, persistence, and pace. In one of the hypotheticals, the ALJ asked the VE to assume an individual with Jarrett's age, education, and work experience who could only 'understand, remember, [and] carry-out simple tasks and concentrate for brief periods of time.' By including that Jarrett had limitations in her ability to concentrate, this hypothetical question adequately accounted for the ALJ's finding that Jarrett had moderate difficulties in concentration, persistence, and pace.").

This Court is unable to find that the ALJ's hypothetical questions fully accounted for Salter's moderate limitations in concentration, persistence and pace. In this regard,

although the ALJ's hypotheticals posed to the VE did include the limitation of "no complex or detailed job instructions," (Tr. 81; *compare id. with* Tr. 314 (finding moderate limitation in the ability to carry out detailed instructions)), unlike *Jarrett*, those hypotheticals did not include the other significant limitation in the area of concentration and persistence, namely, that plaintiff is moderately limited in his "ability to maintain attention and **concentration** for extended periods" (Tr. 314 (emphasis added); *compare id. with* Tr. 81 (this was not part of the hypothetical question)) or, as stated differently by Dr. Eno, he can attend for two-hour periods (*see* Tr. 316). It is clear to the Court that the ALJ should have included in the hypothetical question posed to the VE this other more "directed" moderate limitation (i.e., the ability to concentrate or attend for 2-hour periods) in concentration, persistence, and pace, not only because "time restraints" do impact VE testimony (*see* Tr. 83 ("We're only looking at a four hour workday further complicated by the lifting and carrying restriction and the occasional reaching. We're looking at a profile of much less than sedentary. There'd be no work that such an individual could either perform or sustain on a competitive basis.")) but, more importantly, because the ALJ in this case took pains to include in her hypothetical questions the several limitations associated with the moderate difficulties she found to exist with respect to social functioning (*compare* Tr. 27 ("In social functioning, the claimant has moderate difficulties. Although Dr. Eno stated that the claimant has mild limitations in the ability to maintain social functioning, he is given the benefit of the doubt that he would have moderate limitations in social functioning. The increased limitations are supported by the testimony regarding panic attacks and his ongoing treatment with Dr. Pace, despite its infrequent and limited nature[.]") *and* Tr. 31-32 ("[I]n light of his testimony that the panic attacks may have some residual episodes despite his medications, the claimant may have difficulty with more than occasional

contact with the general public or working in crowds. Therefore, the claimant would be limited to only occasional contact with the general public and he cannot work in crowds.") *with* Tr. 81 & 82 (the two hypotheticals posed to the VE upon which the ALJ relies in reaching her decision of non-disability, included the following limitations: "no working in crowds[]" and "no more than occasional contact with the public[]")).  Stated differently, the ALJ explicitly admitted the importance of limitations in maintaining concentration, persistence and pace insofar as VE testimony is concerned by including in her hypothetical the specific limitation regarding "no complex or detailed job instructions" and, therefore, should have included in the hypothetical questions posed to the VE the additional more "directed" limitation that Salter is moderately limited in his ability to maintain attention and concentration for extended periods. This is particularly true since the ALJ gave no indication that the medical evidence of record suggested that Salter's ability to work was unaffected by this additional "concentration" limitation, "nor did he otherwise implicitly account for this limitation in the hypothetical." *Winschel,* 631 F.3d at 1181.[10]

In light of the foregoing, the undersigned concludes that because the ALJ's relevant hypothetical questions neither explicitly nor implicitly fully accounted for plaintiff's moderate limitations/impairments in concentration, persistence, and pace, the VE's testimony is not "substantial evidence" and cannot support the ALJ's conclusion that Salter can perform those jobs identified by the VE. *Compare Winschel, supra,* 631 F.3d at 1181 *with Jones, supra,* 190 F.3d at 1229 ("In order for a VE's testimony

---

[10]     Certainly, the defendant has not directed the undersigned to any case, regulation, social security ruling, etc., which establishes that the VE necessarily would have understood that an individual limited to "no complex or detailed job instructions" would be moderately limited in his ability to maintain attention and concentration for extended periods.

to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments[/limitations]."). This is but one basis for remand, however, as there exist another major problem with the ALJ's decision.

**B.     Plaintiff's Additional "Combined" Argument that the Commissioner Erred by Improperly Rejecting the Opinions of his Treating Physician, Dr. Raymond Fletcher, Failing to Adequately Develop the Record, and Improperly Determining that he has the Residual Functional Capacity to Perform "Light Work," a Finding Which is not Supported by Linkage to Either the Medical Opinion Evidence or Reasonable Inferences Drawn from the Medical Evidence as a Whole**. In addressing this issue, the Court initially notes that a plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also Packer v. Commissioner, Social Security Admin.*, 542 Fed.Appx. 890, 891, 2013 WL 5788574, *1 (11th Cir. Oct. 29, 2013) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments." (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Here, the ALJ determined Salter's RFC as follows: "**After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can [only] occasionally reach overhead, climb stairs/ramps, bend, stoop, kneel, crouch, or have contact with the general public. The**

**claimant cannot have complex or detailed job instructions but can do simple one and two-step job instructions. The claimant can never climb ladders, ropes, or scaffolds; work at unprotected heights or around dangerous equipment; crawl; or work in crowds.**" (Tr. 28 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'" (quoting *Salter*, 2012 WL 3817791, at *3)), *aff'd,* 542 Fed.Appx. 890 (11th Cir. Oct. 29, 2013)[11]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[12] And, of course, in order to find the ALJ's RFC assessment

---

[11]    In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. 542 Fed.Appx. at 892.

[12]    It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's (Continued)

supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In establishing Salter's RFC in this case, which means determining Salter's "remaining ability to do work despite h[is] impairments[,]" *Packer,* 542 Fed.Appx. at 891—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ's assessment fails. First, the ALJ's RFC assessment does not

_____

decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. App'x at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

include the medically-recognized moderate limitation in plaintiff's "ability to maintain attention and concentration for extended periods[]" (Tr. 314; *see also* Tr. 316 ("Claimant can attend for at least two hour periods."); *compare id. with* Tr. 28 (ALJ's RFC assessment does not include this limitation)) and, thus, there is no articulated linkage in this regard. Just as important, this Court cannot find an articulated linkage between the medical evidence of record and the "physical" portion of the ALJ's RFC assessment due to her improper rejection of the PCEs (and perhaps the pain assessments) completed by plaintiff's treating pain specialist, Dr. Raymond Fletcher, on December 14, 2009 (Tr. 331-332) and September 29, 2010 (Tr. 343-344).

As previously explained, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such opinion, *compare Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician.") *with Green v. Social Security Admin.,* 223 Fed.Appx. 915, 923-924 (11th Cir. May 2, 2007); however, the ALJ's articulated reasons for rejecting a treating source's RFC assessment must, obviously, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same). In this case, there

exists reversible error because the ALJ's articulated reasons for failing to give the PCE (and pain opinions) of Dr. Fletcher controlling weight are not supported by substantial evidence.[13]

> [N]o significant weight can be given to the opinion of Dr. Fletcher expressed on either of his physical capacities evaluation forms. He has provided pain management treatment and nothing further. Although he identifies the claimant's pain as significant, there is no objective findings other than a straight leg raising test that showed the presence or extent of the claimant's pain. Dr. Fletcher identifies his treatment as pain management, but he continued to report that the claimant's pain is uncontrolled in his physical capacities evaluation. This is inconsistent with his unchanging medical treatment and his observations and notes. Dr. Fletcher has routinely provided the same treatment, made the same observations and then followed up with the claimant in the next month. His statement that the claimant's pain is uncontrolled is inconsistent with the sameness of his treatment. Dr. Fletcher's opinion is also inconsistent with the remainder of the medical evidence regarding both pain and functional limitations.

(Tr. 32-33 (footnote added).) It is difficult for the undersigned to make much sense of this analysis. First, though it is decidedly true that Dr. Fletcher was plaintiff's pain management physician, any type of implicit suggestion that plaintiff's treating physician would not be qualified to complete a PCE is rank speculation and is certainly not a "reason" supported by substantial evidence in the record. *Cf. Davis v. Commissioner of Social Security,* 449 Fed.Appx. 828, 833 (11th Cir. Dec. 19, 2011) (ALJ's articulated reasons for disregarding a treating physician's opinion must include "'good reasons'"). Second, the ALJ is simply wrong in saying that "there [are] no objective findings other than a straight leg raising test that showed the presence or extent of the claimant's pain." (Tr. 32.) Indeed, a review of Dr. Fletcher's clinic notes reflect consistent

---

[13]    It is actually unclear to this Court whether the ALJ was addressing both Dr. Fletcher's two PCEs and two pain assessments or whether she was simply referencing Dr. Fletcher's two PCEs. (*See* Tr. 32.) Such confusion in this regard is probably a sufficient basis itself to require remand for further proceedings.

mention of "[t]ight lumber muscles[]" (Tr. 295) and "[i]ncreased tension [of] cervical & lumbar muscles[]" (Tr. 299, 333-334, 340-342 & 379-380), as well as lower extremity reflex exam of 2/4 and tenderness "with tight muscles along lumbar spine with local ecchymosis[]" on intake examination conducted on June 3, 2009 (Tr. 296)[14]. Third, the ALJ is also wrong in insinuating that Dr. Fletcher stated in the physical capacities evaluation that plaintiff's pain was "uncontrolled" and finding this alleged statement inconsistent with the "sameness of treatment"[15] given by the treating physician. The Court has copiously reviewed Dr. Fletcher's physical capacity evaluation forms (Tr. 332 & 343) and on neither did plaintiff's treating physician make the statement attributed to him by the ALJ, i.e., that plaintiff's pain is uncontrolled; instead, those forms simply reflect Dr. Fletcher's diagnoses of cervical and lumbar spondylosis (Tr. 332) or simply lumbar spondylosis (Tr. 343). Thus, the ALJ's circular reasoning in this regard cannot withstand scrutiny and certainly is supported by no evidence. *See Davis, supra*. Finally, the ALJ's statement that "Dr. Fletcher's opinion is [] inconsistent with the remainder of the medical evidence regarding both pain and functional limitations[]" might be a good reason to reject the treating physician's PCEs had the ALJ established what that other pertinent medical evidence[16] says about plaintiff's pain and functional limitations; however, she did not (*see* Tr. 33). And the undersigned's review of all pertinent medical

---

[14]     This examination occurred within days of x-rays showing lumbar transverse process fractures. (*Compare id. with* Tr. 294 ("There is a fracture of the transverse process of L1, L2 and L3 on the left side and possibly L4. There is scoliosis. Degenerative changes are seen from L2 through L5.").)

[15]     This statement by the ALJ ignores the evidence of record that, on occasion, Dr. Fletcher did adjust plaintiff's pain medications. (*See, e.g.,* Tr. 333-334 & 340-342.) Moreover, it does not appear to this Court that "sameness of treatment" would be unusual for a physician who specializes in pain management.

[16]     The ALJ did not order a consultative examination of plaintiff by an orthopedic surgeon or other pain management physician.

evidence related to Salter's back impairment, i.e., lumbar spondylosis—that being the relevant impairment to which Fletcher's PCEs were directed (*compare* Tr. 332 *with* Tr. 343)[17]—reveals nothing inconsistent with Fletcher's opinions regarding pain and functional limitations because even though Dr. Pace noted on one occasion in May of 2009, as referenced by the ALJ (Tr. 29), that plaintiff had a negative straight leg raise (Tr. 275), this examination occurred before plaintiff's lumbar transverse process fractures (*compare id*. (Pace's exam occurred on May 28, 2009) *with* Tr. 294 (June 1, 2009 x-rays)) and, thereafter, when Dr. Pace made mention of plaintiff's back impairment, he consistently noted decreased range of motion of the back (*see* Tr. 369, 371 & 373). Nothing about these findings by Dr. Pace, which the ALJ never mentions (*see* Tr. 28-33), are inconsistent with Fletcher's opinions regarding pain and functional limitations, nor did Dr. Pace ever offer an opinion regarding plaintiff's functional limitations (*see, e.g.,* Tr. 369, 371 & 373). Thus, the ALJ's articulated reasons for rejecting Dr. Fletcher's PCEs and pain assessments—that is, to the extent the ALJ's decision can be regarded as rejecting the treating physician's pain assessment forms—are simply not supported by substantial evidence and it is impossible for this Court to affirm the ALJ's decision. *See Davis, supra,* 449 Fed.Appx. at 833 ("We will not affirm an ALJ's decision without adequate explanation because, without such an explanation, 'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' The ALJ in this case did not give adequate reasons for rejecting Mallory's opinion." (citation omitted)). Moreover, as a consequence of the improper rejection of Dr. Fletcher's opinions, the undersigned

---

[17]     And while it is true that Dr. Fletcher also treated plaintiff's knee and shoulder pain (*see, e.g.,* Tr. 333-334, 340-342, 345 & 379-380), plaintiff's back impairment was the focus of the PCEs completed by Fletcher (Tr. 332 & 343).

cannot find that the ALJ has provided enough reasoning for this Court to conclude that she considered Salter's medical condition as a whole. *See Packer*, 542 Fed.Appx. at 891-892.

Because substantial evidence of record does not support the Commissioner's determination that Salter can perform the physical and mental requirements of less than the full range of light, and this Court cannot substitute its judgment for that of the Commissioner, *see, e.g., Bryant v. Commissioner of Social Security*, 451 Fed.Appx. 838, 839 (11th Cir. Jan. 4, 2012) ("In reviewing the Commissioner's decision, we do not 'decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'"), the Commissioner's fifth-step determination is due to be reversed and remanded for further proceedings not inconsistent with this decision.[18]

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 31st day of March, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[18] The Court does note parenthetically—to the extent that it is at all helpful—that there appears to be no evidence of record establishing plaintiff's disability prior to his "work" accident and fractures of the lumbar transverse at the beginning of June of 2009.